# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50394 | **DATE** | 6/6/2001 |
| **CASE TITLE** | U.S.A. ex rel. JERRY D. JELLIS vs. KENNETH R. BRILEY, Warden | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, petitioner's petition for habeas corpus under 28 U.S.C. § 2254 is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUN - 7 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | 6-6-01 | |
| | | | date mailed notice | |
| /SEC | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2001 JUN -6 PM 3: 53 Date/time received in central Clerk's Office | mailing deputy initials | Document Number |

**DOCKETED**

JUN - 7 2001

UNITED STATES ex rel.      )
JERRY D. JELLIS,      )
            )
         Petitioner,      )    No. 2000 C 50394
            )
     v.                )
            )
KENNETH R. BRILEY, Warden      )
            )
         Respondent.      )

## MEMORANDUM OPINION AND ORDER

Petitioner, Jerry D. Jellis, a prisoner in state custody, has filed this petition for habeas corpus under 28 U.S.C. § 2254 challenging his conviction in the Circuit Court for the 14th Judicial Circuit, Whiteside County, Illinois, of home invasion and six counts of aggravated sexual assault. Jellis' conviction and 75-year sentence were affirmed by the Illinois Appellate Court on May 19, 1997. Jellis did not seek leave to appeal to the Illinois Supreme Court.

Jellis filed a *pro se* post-conviction petition on October 28, 1997, and filed an amended petition with the assistance of counsel on January 20, 1998. The trial court denied all but one claim as meritless, but held an evidentiary hearing on Jellis' claim that his trial counsel had not permitted him to testify on his own behalf. The court found that Jellis had only been advised not to testify, not prevented from testifying, and denied the petition on June 10, 1998. The Illinois Appellate Court affirmed the denial of Jellis' post-conviction petition on February 22, 2000, and the Illinois Supreme Court denied leave to appeal on June 22, 2000. This petition, filed

November 8, 2000, is accordingly timely under 28 U.S.C. § 2244(d). Respondent has answered the petition and acknowledges that Jellis has exhausted state remedies as required by 28 U.S.C. § 2254(b).

A federal court may grant a writ of habeas corpus on behalf of a prisoner held in custody pursuant to a state court judgment only if the petitioner is held in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). It follows that errors of state law are irrelevant unless they resulted in the deprivation of a constitutional or federal right. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Gonzales v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997), *cert. denied*, 523 U.S. 1032 (1998). And it must be kept in mind that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

A habeas petitioner must first have given the state's highest court an opportunity to address each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Each claim must have been "fairly presented," in the manner prescribed by state law, apprising the state courts of the facts and law supporting each claim. A constitutional claim presented to the state courts solely in state-law terms may be found to have been forfeited. *Wilson v. Briley*, 243 F.3d 325, 327-28 (7th Cir. 2001); *Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997).

Once these prerequisites have been met and a federal court reaches the merits of a petitioner's claims, the court may grant a

writ of habeas corpus on a claim decided on the merits by the state courts only if the state courts' rejection of that claim either

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, 28 U.S.C. § 2254(e)(1) provides that determinations of factual issues by state courts are presumed correct, and the presumption may be rebutted only by clear and convincing evidence.

Jellis' petition is an example of "kitchen sink" pleading. The seventeen claims Jellis raises were raised in some fashion in his post-conviction petitions. (Because Jellis did not seek leave to appeal to the Illinois Supreme Court on direct review of his conviction, claims raised on direct appeal have been procedurally defaulted. *Boerckel, supra*.) The court will address them in order. For the sake of simplicity, in some cases frivolous claims will be rejected on the merits without examining whether they have been properly presented to the Illinois courts or whether procedural defaults have been overcome. *See Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir. 1999) ("[T]he rules for procedural default in habeas cases have become Byzantine in their complexity, and in some cases a district judge may be uncertain whether or not default has occurred. In that situation, the judge may wish to discuss an issue

that is potentially defaulted, and we do not mean here to discourage that practice if it seems likely to save time in the long run").

1. **The trial court erred by partially dismissing Jellis' post-conviction petition as frivolous or patently without merit as the Post-Conviction Hearing Act does not authorize partial dismissal of a petition.**

Even if Jellis is correct, this error in state procedure did not deprive Jellis of any federal or constitutional right and is not cognizable as a federal habeas claim. Jellis claims he should have been permitted to amend the petition, but does not state what claims he would have added. In any event, Jellis has no constitutional right to post-conviction review. He has a right only to a fair trial in accordance with due process of law. The state, may, if it chooses, offer post-conviction proceedings to correct errors of both state and constitutional law, but failure to reverse a constitutionally defective conviction is not a separate constitutional violation.

2. **The trial court erred in sentencing Jellis to consecutive terms of imprisonment totaling seventy-five years because under the Unified Code of Corrections consecutive sentences shall not exceed the sum of the maximum terms for the two most serious felonies.**

Respondent contends that this does not raise a constitutional issue because it falls within statutory limits. Resp. at 14. Respondent misunderstands Jellis' argument. Jellis contends that his sentence is contrary to Illinois law, and this would state a claim that he was deprived of liberty without due process of law. But Jellis is mistaken. Illinois law requires consecutive sentences for

4

multiple counts of aggravated sexual assault "committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5-8-4(a)(2). The total of the consecutive sentences Jellis could receive could not exceed the "sum of the maximum terms authorized under Section 5-8-2 [730 ILCS 5/5-8-2] for the 2 most serious felonies involved." 730 ILCS 5/5-8-4(c)(2). Section 5-8-2 provides for "extended term" sentences. Jellis was convicted of Class X felonies and the extended term sentence for Class X felonies is thirty to sixty years, so Jellis could lawfully have been sentenced to a total of 120 years. Jellis argues that the trial judge did not rely on the extended term provision, but the fact that Jellis' individual sentences were not "extended term" sentences is irrelevant to the maximum aggregate sentence he could receive. Jellis' sentence was lawful.

3. **Jellis was denied his right to due process when the trial court allowed count two to be improperly filed. Trial counsel was ineffective for not moving to dismiss count two and appellate counsel was ineffective for failing to raise this issue on appeal.**

4. **The trial court erred when it allowed the ten-count information although it was typed on five sheets of paper. Trial and appellate counsel were also ineffective for failing to raise this issue.**

5. **The trial court erred in treating the ten count information "as signed and sworn to." Jellis was denied effective assistance of counsel when trial counsel failed to move to dismiss the information, and was denied effective assistance of appellate counsel when counsel failed to raise this issue on appeal.**

6.  Jellis was denied his right to due process when the trial court erred in treating the information as if it followed the criminal code. Jellis was denied effective assistance of counsel when trial counsel failed to file a motion to dismiss the information. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on direct appeal.

7.  Jellis was denied his right to due process when the trial court used the word "or" in the order finding probable cause. Jellis was denied effective assistance of counsel when trial counsel failed to file a motion to dismiss the order. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.

The court agrees with respondent that these errors (if they were errors) were purely matters of state procedure that did not deprive Jellis of any constitutional right, and are not cognizable as federal habeas claims. *See, e.g.*, *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998), *cert. denied*, 525 U.S. 881 (1998) (incorrect date stamp on information did not prejudice petitioner).

8.  Jellis was denied his right to due process when the trial court erred in denying the jury's request to see Nurse Lube's testimony. Jellis was denied effective assistance of counsel when trial counsel failed to object to the trial court's reply. Jellis was denied effective assistance of appellate counsel when appellate counsel failed to raise the issue on direct appeal.

According to the petition, the jury sent a note to the trial judge asking for "a copy of the testimony of Nurse Lube." Pet. Exh. E. The judge responded, "No. There is no transcript of any of the testimony. You must rely on your collective memory of the testimony." *Id*.

Jellis complains that the Illinois Appellate Court should not have found this claim barred by *res judicata* as a claim that could

have been raised on direct appeal, since the basis for it did not appear in the record. Assuming this is true, the claim is frivolous. Jellis offers nothing to show that the judge's statement was false, *i.e.*, that a transcript was available at the time. Even if it had been, such a ruling is well within the discretion of a trial judge, and Jellis cannot claim this denied him a fundamentally fair trial.

9. **The trial court erred when, in response to a juror's note, the court stated that guilty or not guilty were the only possible verdicts and there was no third choice. Jellis was denied effective assistance of counsel when trial counsel failed to object and ask the judge to inquire what the note meant. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

Again, assuming the Appellate Court erred in declaring this claim barred by *res judicata*, it is frivolous. There was no third possibility. As the Appellate Court pointed out, there was nothing in the record to support a verdict of guilty but mentally ill or not guilty by reason of insanity. Jellis contends that the jury's request shows that the jury had a reasonable doubt as to his guilt, and the trial judge should have investigated. The judge had no such duty. If the jury had a reasonable doubt as to one of the counts, the jury had been instructed to express it by acquitting Jellis on that count.

The court next addresses a series of claims based on alleged errors of Jellis' trial counsel. As the basis of these claims is found in the record, they could have been, but were not, raised on direct appeal. (Jellis was represented by different counsel on appeal.) The Illinois Appellate Court did not reach the merits of

these claims, holding that because they could have been raised on direct appeal they were barred by *res judicata* on post-conviction review. Resp. Exh. G, at 6-7.

A federal court will not review a question of federal law decided by a state court if the state court's ruling rests on state law grounds independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Franklin v. Gilmore*, 188 F.3d 877, 881-882 (7th Cir. 1999), *cert. denied*, 120 S.Ct. 1535 (2000). *Res judicata* is such an adequate and independent state ground. *Franklin*, 188 F.3d at 883, citing *People v. Moore*, 177 Ill.2d 421, 686 N.E.2d 587, 591 (1997). To overcome such a procedural default, a habeas petitioner must show "cause and prejudice." Ineffective assistance of appellate counsel can constitute "cause," but failure to raise the claim is not enough; counsel's "assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). This is a separate constitutional claim that must be independently exhausted. *Id.* at 452-53.[1]

Accordingly, before the court can reach these claims of ineffective assistance of trial counsel, it must address the corresponding claims of ineffective assistance of appellate counsel. Where the Illinois Appellate Court has ruled on these claims, the court's review is limited to determining whether the ruling was

---

[1] Procedural defaults may also be excused if the petitioner can show that failure to consider his claims would result in a "fundamental miscarriage of justice," that is, the petitioner is actually innocent. This exception requires that the petitioner provide new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). As Jellis offers neither new evidence nor proof of innocence, this excuse is unavailable.

contrary to, or an unreasonable application of, federal law as established by Supreme Court precedents, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Here, however, the Illinois Appellate Court did not address seven such claims of ineffective assistance of appellate counsel, finding them waived. Resp. Exh. G at 7-8. The court has already determined that four of the underlying claims are not cognizable as habeas claims, so it is unnecessary to address them further. As to the remaining three, the court must address the effect of the finding of waiver.

The Illinois Appellate Court found these claims of ineffective assistance of appellate counsel waived because Jellis had cited no authority to support them, stating,

> It is well settled that a reviewing court is not a depository into which an appellant can dump the burden of research and argument. [citation] An appellant therefore waives all claims that are not supported by relevant authority and coherent argument. [citation] We hold that the seven claims for which the defendant fails to cite relevant authority are waived.

Resp. Exh. G at 8. If this qualifies as an independent and adequate state ground of decision, resulting in a procedural default, this court would be precluded from reviewing these claims of ineffective assistance of appellate counsel, and consequently the underlying claims as well.

The state has no constitutional obligation to provide post-conviction review, and so is free to establish such procedural rules as it deems expedient. Nevertheless, permitting the rule to preclude

federal courts from considering constitutional claims on habeas review is troublesome. The vast majority of habeas petitioners are unrepresented. While unrepresented prisoners can be expected to meet filing deadlines, it is unreasonable to require them to submit researched appellate briefs.[2]

The requirement that authority be cited in appellate briefs is found in Illinois Supreme Court Rule 341(e)(7), a rule applicable to appeals generally.[3] The Seventh Circuit has treated a finding of waiver for failure to comply with other portions of the rule as an independent state ground of decision resulting in a procedural default. *United States ex rel. Holleman v. Duckworth*, 770 F.2d 690, 692 (7th Cir. 1985) (failure to assert that state violated time limit of Interstate Agreement on Detainers waived issue); *Spreitzer v. Schomig*, 219 F.3d 639, 646 (7th Cir. 2000), *cert. denied*, ___ U.S. ___, 121 S.Ct. 1366 (March 19, 2001) (claim first presented in a reply brief waived). The Seventh Circuit has not yet determined that

---

[2] Prisoners have no right to counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Prisoners do have a right of access to the courts, but after *Lewis v. Casey*, 518 U.S. 343 (1996), that right appears limited to putting a post-conviction petition on file. The majority opinion in *Casey* stated that the state need only provide "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement," *id.* at 356, and disclaimed statements in *Bounds v. Smith*, 430 U.S. 817 (1977), that the state is required to "enable the prisoner ... to litigate effectively once in court," *id.* at 354. While these statements may be dicta, *see id.* at 410 n.6 (Stevens, J., dissenting), they reflect the thinking of five Justices. Enforcement of this right of access is problematic; Judge Posner pointed out "the paradox that ability to litigate a denial of access claim is evidence that the plaintiff has no denial of access claim!" *Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998), *cert. denied.*, 526 U.S. 1146 (1999).

[3] In relevant part, Illinois Supreme Court Rule 341(e) provides:

The appellant's brief shall contain the following parts in the order named:

* * *

(7) Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal or abstract, if any, where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.

a finding of waiver for failure to cite authority results in procedural default, although other district judges in the Northern District of Illinois have.[4]

To be given effect as a procedural default in federal court, the state procedural rule must be "adequate" and "independent." To be adequate, it must have been "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348-51 (1984); *Franklin*, 188 F.3d at 882. It must be applied in a "consistent and principled way"; a rule that is "infrequently, unexpectedly, or freakishly" applied is not an adequate state ground that bars federal habeas review. *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000). Most published opinions in which this rule is enforced either involve civil suits or post-conviction cases (primarily capital cases) where the prisoner was represented by counsel. Because most Illinois Appellate Court opinions dealing with post-conviction petitions in non-capital cases are unpublished, it cannot be readily determined whether this particular requirement of Rule 341(e)(7) is regularly enforced against unrepresented prisoners.

A state court's decision is "independent" if it is independent of the federal question, and the court "actually ... relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). Illinois courts

---

[4] *See United States ex rel. Hindi v. Warden*, 82 F.Supp.2d 879, 885 (N.D. Ill. 2000) (Lindberg, J.); *United States ex rel. Labney v. Washington*, No. 95 C 1575, 1995 WL 330810 (N.D. Ill. 1995) (Conlon, J.); *Sandoval v. Acevedo*, No. 91 C 1352, 1992 WL 71797 (N.D. Ill. 1992) (Rovner, J.); *United States ex rel. James v. O'Leary*, No. 89 C 7916, 1990 WL 84522, (N.D.Ill. 1990) (Kocoras, J.); *United States ex rel. Lewis v. Chrans*, No. 84 C 7779, 1985 WL 1758 (N.D.Ill. 1985) (Holderman, J.).

11

may excuse noncompliance with Rule 341(e)(7) in the interest of justice: "the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." *Hux v. Raben*, 38 Ill.2d 223, 224-25, 230 N.E.2d 831, 832 (1967). There are reported opinions in which a prisoner's failure to cite authority has been excused "in exercise of [the court's] responsibility for a just result." *People v. Smith*, 268 Ill.App.3d 574, 578 n.1, 645 N.E.2d 313, 317 n.1 (1st Dist. 1994), app. denied, 161 Ill.2d 537, 649 N.E.2d 423 (1995); *People v. Mitchell*, 209 Ill.App.3d 562, 574, 568 N.E.2d 292, 300 (1st Dist. 1991).

If the failure of *pro se* prisoner appellants to cite authority are regularly excused for the sake of a "just result," it is doubtful that the rule can be considered independent of the merits of the federal claim. While it is settled that a limited review of defaulted claims for "plain error" does not open the door to federal review of the merits, *Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996), *cert. denied*, 522 U.S. 834 (1997), the looseness of the "just result" standard cautions against finding this rule an independent state ground barring federal review. Having doubts about both the independence and adequacy of the grounds for waiver here, this court accordingly reaches the merits of these claims of ineffective assistance of appellate counsel.

Like claims of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel is tested by the two-part test of *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* requires a showing that (1) counsel's performance fell below an objective standard of reasonableness, 466 U.S. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In the case of appellate counsel, the first test asks "whether it was within the realm of competent appellate representation to decline to raise a particular point on appeal, considering both the arguments that might be made and the governing standard of review." *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). The second asks whether there was a reasonable probability that, but for Jellis' counsel's errors, his case would have been remanded for a new trial or that the trial court's judgment would have been modified on appeal. *Id.* Appellate counsel is not required to follow a "kitchen sink" approach, raising every possible error no matter how insignificant:

> To the contrary, one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal. [citation] Throwing in every conceivable point is distracting to appellate judges, consumes space that should be devoted to developing the arguments with some promise, inevitably clutters the brief with issues that have no chance because of doctrines like harmless error or the standard of review of jury verdicts, and is overall bad appellate advocacy. On the other hand, counsel can't throw the baby out with the bath water.

*Id.* at 790-91.

Jellis' appellate brief, Resp. Exh. A, raised several issues regarding the credibility of the complaining witness, the chain of custody of important physical evidence, erroneous admission of the complaining witness' statements to medical personnel, and the court's denial of Jellis' post-trial motion for an independent DNA expert. Appellate counsel was willing to question trial counsel's competence on the latter point, stating that if the Appellate Court found that Jellis had waived his right to an independent expert, the court should find counsel was ineffective for not raising the matter prior to trial. *Id.* at 36. This vigorous representation "dispels any notion of *per se* ineffectiveness," *Franklin*, 188 F.3d at 884, so the issue is whether appellate counsel omitted raising a "significant and obvious issue" without a legitimate strategic purpose. *Id.*[5] Obviously, evaluating appellate counsel's failure to raise an issue requires a look at the merits of the underlying issue; failure to appeal a non-error, or a trivial error, is not ineffective assistance.

10. **The trial court erred when it allowed the 10-count information to go to the jury room when it had not been entered in evidence. Jellis was denied effective assistance of counsel when trial counsel agreed to send the information to the jury room. Jellis**

---

[5] Jellis offers a letter dated June 25, 1998 from Assistant Appellate Defender Verlin R. Meinz, Pet. Exh. C, in which Meinz states that the Third Judicial District Appellate Defender's Office cannot continue to represent Jellis in his post-conviction proceedings because Jellis had claimed that another attorney from that office was ineffective in Jellis' direct appeal. The letter stated that representing Jellis would put the Appellate Defender's Office "in the untenable position of arguing that we had 'bungled' the direct appeal." Jellis refers to the letter again and again, and seems to think that it amounts to an admission that the appeal was "bungled." It is nothing of the sort.

**was denied effective assistance of appellate counsel when appellate counsel failed to raise the issue on appeal.**

The original information charged Jellis with home invasion (Count I), attempt murder (Count II), aggravated criminal sexual assault (Counts III-VIII), and aggravated criminal sexual abuse (Counts IX and X). Counts III-VIII alleged six acts of oral, vaginal, and anal sexual penetration of the victim, while Counts IX and X charged that Jellis placed his hands and mouth on the victim's breast for the purpose of sexual arousal. Pet. Exh. B. It was these last two counts that were dismissed. Pet. Exh. G. In view of the multiple counts of sexual penetration with which Jellis was charged, all arising in the same encounter with the victim, it could hardly have prejudiced the jury to have learned that he had originally also been charged with the less serious offenses of sexual touching in the course of the same incident. The probability that deleting these counts would have affected the outcome was zero, and appellate counsel was not ineffective in not raising the issue.


11. **Jellis was denied effective assistance of counsel when trial counsel failed to recall the state's witness to find out where the evidence was kept. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

According to Jellis, his trial counsel attempted to ask Detective Carney on cross-examination where certain physical evidence had been kept, in order to establish that it was in Carney's possession and not in the police "evidence room." The judge sustained the state's objection that the question went beyond the scope of direct

examination, but indicated that Jellis' counsel could call Carney as his own witness. Jellis' counsel did not do so.

Jellis' counsel argued on appeal that Carney had kept People's Exhibit 21, the sexual assault evidence kit containing samples taken from the victim, for about six hours without refrigeration before giving it to Deputy Wieneke, who kept it in his home refrigerator. See Resp. Exh. A. at 23-24. Counsel argued both that the state had not shown a proper chain of custody, since Wieneke's refrigerator was not an appropriate storage place, and that the sample may have been degraded by lack of refrigeration. *Id.* at 25-26. Additional testimony from Carney would have been cumulative, and it was not ineffective assistance for Jellis' appellate counsel to pass over trial counsel's not recalling Carney to the stand.

Further, on direct review of Jellis' conviction, the Illinois Appellate Court stated that even if Jellis had won his point with respect to the DNA evidence and the DNA evidence had been *totally excluded* it would not have changed the outcome: "improper admission of DNA evidence is harmless error where the other evidence of the defendant's guilt is overwhelming." Resp. Exh. B at 6.[6/] This precludes a finding of prejudice under the second prong of *Strickland* with respect to both the threshold issue of ineffective assistance of appellate counsel and the underlying claim of ineffective assistance of trial counsel.

---

[6/] Jellis does not contend that proper DNA evidence would have exonerated him, only that improper handling of the DNA evidence inculpating him made it unreliable.

This court concurs in the assessment that the evidence against Jellis was "overwhelming." The victim had been acquainted with Jellis, and other witnesses confirmed that Jellis had visited her earlier in the evening. The victim testified she had enough light to see and recognize Jellis when he attacked her. Jellis offered no substantial evidence either to impeach the victim's testimony or affirmatively show his innocence.

12. **Jellis was denied effective assistance of counsel when trial counsel failed to object to the state's questioning where the witness viewed the photo lineup. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

Jellis states that while questioning the victim at trial, the prosecutor asked her whether she viewed a photographic lineup "at a Rock Island County Law Enforcement Building later that day," and the victim testified she had. While Jellis' trial counsel objected to the prosecutor's question as leading, and the objection was sustained, Jellis contends his counsel should have asked the court to instruct the jury to disregard the line of questioning, since the jury might have inferred that Jellis had been charged with crimes in Rock Island County as well as in Whiteside County.

The Illinois Appellate Court reached the merits of this claim, and found Jellis' appellate counsel was not ineffective. The court stated that admitting such testimony was not reversible error, based on an Illinois Supreme Court case, so "no objection to the testimony would have been sustained." Resp. Exh. G at 10-11. Appellate

17

counsel was not ineffective in not raising this trivial issue. Furthermore, the underlying claim of ineffective assistance of trial counsel is meritless. To have asked for an instruction to disregard this portion of the testimony would have focused the jury's attention on it, and there was no probability that counsel's not asking for it affected the outcome.

**13. Jellis was denied effective assistance of counsel when trial counsel followed the state's line of questioning of Detective Carney. Jellis was denied effective assistance of appellate counsel when appellate counsel failed to raise the issue on appeal.**

Jellis asserts that his counsel compounded his "error" of failing to object to the reference to the "Rock Island County Law Enforcement Center" by referring to it himself on cross-examination. The court rejects this claim for the same reasons as the preceding claim. Counsel's reference to the Rock Island County facility did not fall below reasonable professional norms, there was no probability that it affected the outcome of the trial, and failure to raise a trivial matter is not ineffective assistance of appellate counsel.

**14. Jellis was denied effective assistance of counsel when trial counsel refused to allow Jellis to testify. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

Because this claim rests on alleged facts not found in the record, it could not have been raised on direct appeal. Jellis' appellate counsel could not have been ineffective for not raising it, and the Illinois courts did not find it waived. This claim was

addressed on the merits by both the trial and appellate courts on post-conviction review.

A criminal defendant's right to testify is protected by the Fifth, Sixth, and Fourteenth amendments. *Rock v. Arkansas*, 483 U.S. 44, 52, 53 n.10 (1987); *Underwood v. Clark,* 939 F.2d 473, 475 (7th Cir. 1991). This right is personal to the defendant and may not be waived by counsel. *Rogers-Bey v. Lane,* 896 F.2d 279, 283 (7th Cir. 1990), *cert. denied, Rogers-Bey v. McGinnis*, 498 U.S. 831 (1990). "If a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede." *United States v. Curtis,* 742 F.2d 1070, 1076 (7th Cir. 1984), *cert. denied, Curtis v. United States*, 475 U.S. 1064 (1986). Nevertheless, even if defense counsel improperly prevents his client from testifying, the defendant is not entitled to a new trial if the error was harmless. *Ortega v. O'Leary*, 843 F.2d 258, 262 (7th Cir. 1988), *cert. denied*, 488 U.S. 841 (1988).[2]

In support of this claim, Jellis submitted his affidavit as an exhibit to his amended post-conviction petition. Exh. 1 to Resp. Exh. E. Jellis stated in the affidavit that he had discussed an alibi defense with his counsel, Alan K. Schmidt, and "made it clear" that he would be testifying at trial. Schmidt filed a disclosure stating that Jellis would offer an alibi defense. Jellis reaffirmed

---

[2] Subsequent to the Seventh Circuit's opinion in *Ortega*, the Supreme Court held that the standard of review of constitutional claims of trial error on collateral review is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict," rather than the direct-review standard of "harmless beyond a reasonable doubt." *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The Illinois courts, however, did not address whether the error here might have been harmless. As this court agrees Jellis was not prevented from testifying, it is likewise unnecessary for it to reach the harmless error analysis.

to Schmidt a week before trial that he wanted to testify; Schmidt told him that "it was his decision who was going to be called as a witness and we would see if I would testify." On the day of trial, Jellis said he wanted to testify, and Schmidt said "we will see how the trial goes." Schmidt rested his case without calling Jellis. Jellis asked why he had not been called to testify, and Schmidt stated that it was Schmidt's decision that Jellis not testify. The affidavit did not state what Jellis' trial testimony would have been, had he testified.

The Circuit Court held an evidentiary hearing and heard testimony from Jellis and Schmidt. Jellis testified consistently with his affidavit, and additionally testified that he did not know he had a right to testify. Schmidt testified that he did not refuse to allow Jellis to testify. According to Schmidt, he had probably advised Jellis not to testify based upon his prior felony conviction for unlawful restraint, and Jellis made the decision not to do so. The judge believed Schmidt and denied the petition, and the Illinois Appellate court determined that this decision was not manifestly erroneous.

In this circuit a habeas petitioner claiming his counsel prevented him from testifying must present "something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand." *Underwood,* 939 F.2d at 476. "Some greater particularity is necessary--and also we think

some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify--to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of this claim." *Id.; see Etienne v. Weber*, No. 97 C 5647, 1999 WL 417354 (N.D. Ill. 1999) (Moran, J.). It is hard to see why Jellis' uncorroborated testimony at the evidentiary hearing should be given more weight than his uncorroborated affidavit would have been given.

Even if this claim gets through the door, Jellis can prevail only if he can show by clear and convincing evidence that the state court was wrong to believe Schmidt rather than him. 28 U.S.C. § 2254(e)(1).[8/] Crediting Schmidt's testimony, as the trial court did, that Jellis had accepted Schmidt's advice not to testify, it would have made no sense for Schmidt to proceed to impress upon Jellis that he had a right to testify anyway. Defense attorneys are not required to give their clients formal notice, like the "Miranda warnings" given an arrestee, that they have the right to testify. The trial court could reasonably have disbelieved Jellis' claim that at the time of trial he was ignorant of his right to testify -- and presumably remained ignorant of it until he filed his post-conviction petition more than two years later.

---

[8/] Jellis quotes a discussion between the trial judge and the assistant state's attorney which, he claims, shows that the judge had prejudged the outcome of the evidentiary hearing. Pet. Br. at 24-25. The judge said nothing more than that he believed it unnecessary for Jellis to show ineffective assistance of appellate counsel in order to be granted a new trial on his claim of ineffective assistance of trial counsel. This is not evidence of prejudice that would cause this court to question the decision.

On the other hand, a recommendation that Jellis not testify would have been reasonable. Jellis' alibi defense had already been introduced in the form of Jellis' statement to the police. If Jellis had testified, he would have had to explain why he told the police he had not been at the victim's house that night, contrary to the testimony of two witnesses who had seen him there. Jellis has not shown what his testimony would have added that would have outweighed exposing him to cross-examination. In his initial post-conviction petition, Jellis stated that "petitioner would have testified that he was in the victims [sic] house on several different occasions. Petitioner was going to help the victims [victim's?] move from that house." Resp. Exh. C at 15a. This would only have confirmed that (a) the victim knew Jellis reasonably well -- hence unlikely to be mistaken in her identification -- and (b) that the victim had previously been on good terms with him. Both would have hurt rather than helped Jellis' case. Moreover, his prior felony conviction could have been introduced to affect his credibility as a witness.

15. **Jellis was denied effective assistance of counsel when trial counsel failed to object to the state's closing argument statement that the jury had heard nineteen witnesses testify for the state and only three for the defense. Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

The Appellate Court held this claim of ineffective assistance of appellate counsel was waived because Jellis failed to cite authority. For the reasons discussed above the court disregards the waiver and

reaches the merits of the claim. In closing argument, counsel for the state told the jury that the state had offered nineteen witnesses while the defendant had offered only three. Counsel then summarized the testimony of the defense witnesses and explained how their testimony, taken as true, was not inconsistent with Jellis' guilt. See Pet. Ex. I. Jellis' counsel did not object to what Jellis contends were prejudicial remarks calculated to call the jury's attention to his failure to testify.

The prosecution was entitled to summarize the evidence for the jury, including the testimony of defense witnesses. The prosecutor's comments were fair and did not comment on Jellis' failure to testify. Trial counsel did not act inappropriately in not objecting, and appellate counsel had no obligation to raise a frivolous claim.

16. **Jellis' constitutional right to due process under the law was violated when the state commented on Jellis' failure to testify on his own behalf. Jellis was denied effective assistance of counsel when trial counsel failed to object or ask for a mistrial. Similarly, Jellis was denied effective assistance of counsel when appellate counsel failed to raise the issue on appeal.**

The prosecutor in his opening statement described the general order of a criminal trial, and stated that after the state had rested, Jellis could present witnesses and testify himself if he wished, but was not required to do so. Pet. Exh. J. This, Jellis contends, aroused an expectation that he would testify. It appears that the Appellate Court disposed of this claim, which it characterized as a "comment upon the defendant's right to remain

silent," by stating that it was "contradicted by the record." Resp.
Exh. G. at 8-9.

As Jellis' exhibit demonstrates, the prosecutor's comment was in
the record. It is understandable, however, that the Appellate Court
did not consider it a comment on Jellis' right not to testify. The
remarks came at the beginning of the case before the state knew
whether Jellis would testify. The trial judge, in discussing Jellis'
amended post-conviction petition, acknowledged that "it would be
better if the State didn't make this type of a statement." Pet. Exh.
K. Nevertheless, he found the prosecutor's statement to be no more
than a general description of trial procedure. *Id.*

The court agrees on both counts. The prosecutor should have said
no more than that the defense would put on whatever witnesses it
chose, without referring to the prospect of the defendant testifying.
But since the error would not have warranted aborting the trial, an
objection, even if it had been sustained, would only have drawn the
jury's attention to the question of whether Jellis would testify.
In addition, the jury was instructed at the end of the case that the
fact that Jellis did not testify should not be considered in arriving
at the verdicts. Neither trial counsel nor appellate counsel was
ineffective in ignoring the issue.

17. **The trial court erred when sentencing Jellis to an excessive
sentence. Jellis was denied effective assistance of counsel
when appellate counsel failed to raise the issue on appeal.**

Jellis' amended post-conviction petition contended that Jellis' sentence was disproportionate in violation of both the Eighth Amendment and the Illinois Constitution, pointing out that Jellis' sentence, longer than the *maximum* term for second degree murder, was "the longest sentence imposed by a judge in Northern Illinois for this type of offense." Resp. Exh. E. The petition also alleged that Jellis' appellate counsel had been ineffective in failing to appeal the sentence.

The Illinois Appellate Court held that Jellis' appellate counsel was not ineffective. The court stated that Jellis had terrorized the victim in her own home and had repeatedly sexually assaulted her, "[y]et his sentence was only slightly more than half of what it could have been. Raising an excessive sentence claim on appeal would have been futile, and effective representation does not require an attorney to raise futile motions." Resp. Exh. G at 11.

The length of Jellis' sentence was a "significant and obvious issue," and in view of the frequency with which such claims are made on appeal it is arguably surprising that Jellis' appellate counsel did not make it. Although the Illinois Appellate Court for the Third District need not follow First District precedent, in view of *People v. Norfleet*, 259 Ill.App.3d 381, 396-97, 630 N.E.2d 1231, 1243-44 (1st Dist. 1994), and cases cited there, it would not have been frivolous to argue that Jellis' sentence was excessive. The Illinois Appellate Court held in *Norfleet* that the trial court had abused its discretion in sentencing the defendant to four consecutive 25-year

terms for four counts of aggravated criminal sexual assault occurring in the course of the same incident. The defendant had no prior felony convictions, and the court found that to impose a virtual life sentence ignored the possibility of rehabilitation, contrary to Article 1, Section 11 of the Illinois Constitution. Cases cited in *Norfleet* tend to show that Jellis received a harsher sentence than most.

Nevertheless, the Illinois Appellate Court for the Third District, which would have heard the argument had Jellis' appellate counsel made it, has declared the argument futile, impaling any claim of ineffective assistance on the prong of lack of prejudice. Even if we could find that Jellis' appellate counsel had been ineffective in failing to challenge his sentence, it would do Jellis no good. Finding that Jellis' appellate counsel had been ineffective does no more than permit this court to reach the underlying claim. Assuming Jellis had a plausible argument that his sentence was an abuse of discretion as a matter of *Illinois* law, this court cannot grant habeas relief on the basis of state-law claims. Any claim based on the federal constitution that Jellis' sentence is excessive was, and is, a non-starter.

Normally a federal court will not review a state sentence falling within statutory limits. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997); *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994), *cert. denied*, 514 U.S. 1109 (1995). To the extent the Eighth Amendment limits the length of a sentence, it is violated only by "extreme

sentences that are grossly disproportionate to the crime." *Harmelin*

*v. Michigan*, 501 U.S. 957, 1001 (1991) (concurring opinion of

Kennedy, J., joined by O'Connor and Souter, JJ.).

"Extreme" means "very extreme." *Harmelin* held that a mandatory

sentence of life in prison without possibility of parole was not

cruel and unusual punishment for a person with no prior felony

convictions convicted of possessing 672 grams of cocaine. By this

standard, a 75-year sentence for rape is not constitutionally

excessive. Even before *Harmelin*, applying the standard of *Solem v.*

*Helm,* 463 U.S. 277, 285-88 (1983), the Fifth Circuit held in *Edwards*

*v. Butler*, 882 F.2d 160 (5th Cir. 1989), that Louisiana's mandatory

life sentence without possibility of parole is a constitutionally

acceptable punishment for rape, noting that four other jurisdictions

permitted life sentences for rape. *Id.* at 167. Jellis' sentence is

not unconstitutional.

As Jellis' conviction and sentence do not offend the Constitution

or laws of the United States, the petition for writ of habeas corpus

is denied. Jellis may file a notice of appeal within thirty days of

the entry of judgment. No appeal will be considered unless either

this court or the Court of Appeals grants a certificate of

appealability, which requires a "substantial showing of the denial

of a constitutional right." 28 U.S.C. § 2253(c). A certificate of

appealability requires a showing that reasonable jurists could debate

whether the petition should have been resolved differently or that

the issues presented were adequate to deserve encouragement to

proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).
If Jellis seeks a certificate of appealability from this court, he
must explain, with respect to each claim he wishes to appeal, how he
meets this standard.

                                    **E N T E R:**

                                    _____
                                    **PHILIP G. REINHARD, JUDGE**
                                    **UNITED STATES DISTRICT COURT**

DATED:  ___June 6, 2001___

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**

JUN - 7 2001

United States ex rel. Jerry D. Jellis

v.

Kenneth R. Briley

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50394

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☑ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that petitioner's petition for habeas corpus under 28 U.S.C. § 2254 is denied.

FILED-WD
2001 JUN -6 PM 3: 53
CLERK
U. S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Susan Wessman

Susan Wessman, Deputy Clerk

Date: 6/6/2001